UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-155-GWU

JAMES RAY CANADA,                                                    PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.

## INTRODUCTION

James Canada originally brought <u>Canada v. Astrue</u>, London Civil Action No. 08-68-KSF (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income (SSI). After a period of administrative reconsideration prompted by the granting of the defendant's motion for entry of judgment and remand on September 3, 2008 (Tr. 397-399) by the Honorable Karl S. Forester, it is before the undersigned on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity?
   If so, the claimant is not disabled and the claim is denied.

1

11-155  James Ray Canada

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not

11-155  James Ray Canada

form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Canada, a 46-year-old former packer with a "limited" education, suffered from impairments related to a history of right shoulder dislocation, degenerative disc disease of the neck with

5

11-155 James Ray Canada

recurrent neck pain, acid reflux disease, a history of polysubstance abuse, and a personality disorder. (Tr. 367, 373). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 371, 373). Since the available work was found to constitute a significant number of other jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 374). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However, the current record does not mandate an immediate award of SSI. Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The hypothetical question initially presented to Vocational Expert William Ellis included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as: (1) an inability to ever perform above the shoulder motions with the dominant right upper extremity; (2) an inability to stand or walk for more than four hours each a day; (3) an inability to ever climb ladders, ropes or scaffolds; (4) an inability to more than occasionally perform other postural activities including climbing ramps or stairs; (5) an inability to more than frequently

6

perform motions with the non-dominant left upper extremity including motions in all directions; (6) a limitation to jobs requiring only simple, one or two step instructions; (7) an inability to perform jobs in which reading was an essential element; (8) a limitation to jobs requiring no more than occasional casual contact with other persons and where supervision would be direct and non-confrontational; and (9) an inability to perform highly stressful jobs, precluding all production rate and quota work. (Tr. 547-548). In response, Ellis identified a significant number of jobs in the national economy which could still be performed. (Tr. 548). The ALJ relied upon this testimony to support the administrative decision. (Tr. 374).

Canada argues that the hypothetical question failed to accurately portray his limitations as found even by the ALJ. The plaintiff notes the ALJ determined that he was restricted to no more than occasional motion involving the non-dominant left upper extremity. (Tr. 371). However, the hypothetical question permitted frequent left upper extremity motion. (Tr. 548). Since the physical restrictions included in the hypothetical question did not match those found by the ALJ, the question did not fairly characterize the claimant's condition. Therefore, the ALJ could not rely upon the information provided by Ellis in response to this hypothetical question and a remand for further consideration is required.

The defendant concedes the error but maintains that this mistake was no more than harmless error. This assertion is based upon review of the vocational

expert's subsequent testimony, which the defendant argues indicates that the mistake would not affect one's ability to perform the cited jobs. The defendant notes that in follow-up questioning after presentation of the initial hypothetical question, the ALJ inquired as to the effect of a limitation concerning no more than occasional reaching with the dominant right upper extremity. (Tr. 549). The vocational expert, apparently not hearing the question well, asked for clarification whether this limitation involved the dominant right upper extremity or the non-dominant left upper extremity. (Tr. 550). The ALJ stated that the limitation presented involved the dominant right upper extremity. (Id.). Ellis went on to testify that the combination of the no more than occasional reaching with the dominant right upper extremity restriction and the aforementioned reading impairment would preclude performance of all jobs. (Id.). The defendant asserts that this testimony implies that the vocational expert was not concerned about an inability to more than occasionally reach with the non-dominant left upper extremity. However, the court finds this assertion to be speculative.

What is clear to the undersigned from review of the overall testimony of Ellis is that Canada's numerous impairments had severely limited his potential job base. Clearly, an additional restriction could easily result in no jobs being available. The vocational expert never had the opportunity to consider the limitation to occasional reaching with the non-dominant left upper extremity, which the ALJ had specifically

8

found as afflicting him, because the ALJ failed to present it to Ellis.  Furthermore, this would not appear to have been a gratuitous finding on the part of the ALJ since Dr. Burchett, a consultative examiner, identified this restriction on his Medical Source Statement of Ability to do Work-Related Activities Form. (Tr. 507).  The ALJ found that Dr. Burchett's opinion was entitled to "great" weight.[1]  (Tr. 373). Therefore, the court finds that the hypothetical question did not fairly characterize the plaintiff's physical condition and remand of the action for further consideration is required.

Canada raises other arguments with which the undersigned does not agree. The ALJ did not include among his findings all of the restrictions identified by Dr. Burchett, whose opinion was not contradicted in the record by that of another treating or examining source.  Among the restrictions identified by Dr. Burchett, but omitted by the ALJ, were an inability to sit without interruption for more than two hours, stand or walk for more than two hours without interruption, an inability to reach overhead, push or pull with the right hand or operate a motor vehicle.  (Tr.

---

[1] The ALJ did not give full weight to Dr. Burchett's opinion, finding that the reaching limitations were too restrictive.  (Tr. 373).  In addition to the restriction concerning occasional reaching with the non-dominant left upper extremity, the doctor precluded all reaching with the dominant right upper extremity.  (Tr. 507).  Since the ALJ specifically included a limitation concerning no more than occasional motion with the non-dominant left upper extremity, obviously, only the restrictions concerning the right upper extremity were found not binding.

506-507).  The defendant, citing Social Security Ruling (SSR) 83-12, argues that the normal work breaks and a lunch period would be sufficient to account for the limitations concerning sitting, standing and walking for no more than two hours at a time.  While the ALJ found no restriction concerning driving, the defendant notes that the jobs cited by Ellis, including inspector/tester and packager/filling machine operator, would not appear to involve this activity. (Tr. 548).  The ALJ indicated that he did not believe that Dr. Burchett's restrictions concerning the hands were well-supported.  (Tr. 373).  The defendant noted a number of modest findings which appear to support this determination, including the lack of tenderness, redness, warmth, swelling and nodules upon examination of the claimant's shoulders, elbows and wrists, and the lack of swelling, atrophy, redness, warmth and tenderness upon examination of the hands.  (Tr. 501).  Upon remand, Canada will be able to present additional evidence challenging this finding.

     Canada also asserts that the ALJ erred in determining his mental status.  The plaintiff notes that he was examined by Psychologists James Leisenring and Mary Allen-Genthner, each of whom identified the existence of more severe mental restrictions than those found by the ALJ. (Tr. 259, 265-266). However, the claimant was also examined by Psychologist Timothy Baggs, who reported that he would have no more than a "mild" impairment in such areas as interacting with the public, supervisors or co-workers and in responding appropriately to usual work changes

11-155  James Ray Canada

and changes in work routine. (Tr. 496-497). The mental factors found by the ALJ were compatible with this opinion. The opinion of Baggs would offset those of the equally-placed Leisenring and Allen-Genthner. Therefore, the court finds no error on this point.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration of Canada's physical status. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 29th day of March, 2012.

Signed By:

<u>G. Wix Unthank</u>

United States Senior Judge